[Sac. No. 2171. Department Two.—March 16, 1915.]

## E. P. CHRISSINGER, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Respondents.

NEGLIGENCE—NONSUIT WHEN PROPER—PLAINTIFF'S NEGLIGENCE PROXIMATE CAUSE OF INJURY.—Where a judgment of nonsuit is rendered in an action to recover for personal injuries alleged to have been caused through the negligent operation of a railroad train by the defendant, the fact that the defendant omitted the usual precautions and was negligent does not require a reversal, if the other circumstances indicate, as matter of law, that from the most favorable view of the facts the court must have concluded that the plaintiff's own negligence was the proximate cause of the injury.

ID.—CROSSING RAILWAY TRACK—FAILURE TO LOOK FOR APPROACHING TRAIN.—In the case of injury by a passing train to a person crossing the track, intent upon reaching a mail-car on a siding in order to post a letter, although the plaintiff may testify that he did look and listen but failed to observe the approaching train, if the facts undisputably show, as they do in the present case, that by looking he could not have failed to see the train coming, he cannot recover and a nonsuit is properly granted, even if the approaching train failed to sound either bell or whistle.

ID.—DUTY OF PERSON APPROACHING RAILWAY TRACK.—A person approaching a railway track, which is itself a warning of danger, must take advantage of every reasonable opportunity to look and listen.

ID.—CONTRIBUTORY NEGLIGENCE WHEN NOT QUESTION FOR JURY.—Although the question of contributory negligence or freedom from it is ordinarily one for the jury, where, as in the present case, the standard of conduct is so obvious as to be applicable to all persons, and the plaintiff has failed to measure up to that standard under the circumstances shown, he is not entitled to have his case go to the jury.

APPEAL from a judgment of the Superior Court of Glenn County and from an order refusing a new trial. William M. Finch, Judge.

The facts are stated in the opinion of the court.

Ben F. Geis, and Duard F. Geis, for Appellant.

Frank Freeman, for Respondents.

MELVIN, J.—Plaintiff was injured by a north bound limited train of the defendant corporation while he was crossing the main track of that company's railroad at Willows. Defendant Riley was the engineer of the train which struck plaintiff. In his action for damages after all of the testimony in plaintiff's behalf had been heard the court sustained a motion for nonsuit and judgment was given accordingly. From the said judgment and from an order denying his motion for a new trial plaintiff appeals.

There was a conflict of evidence upon the subject of warning blasts of the whistle, but for the purposes of this discussion it must be assumed that the engineer neither sounded the whistle nor caused the bell to be rung. The evidence shows without conflict that the train was moving at a rate of speed of approximately twenty miles an hour. But the fact that the usual precautions were omitted and the defendants were negligent does not require a reversal of the judgment and order if the other circumstances indicate, as matter of law, that from the most favorable view of the facts the court must have concluded that plaintiff's own negligence was the proximate cause of the injury. (*Holmes* v. *South Pacific Coast Ry. Co.*, 97 Cal. 167, [31 Pac. 834]; *Green* v. *Los Angeles etc. R. R. Co.*, 143 Cal. 37, [101 Am. St. Rep. 68, 76 Pac. 719]; *Hutson* v. *Southern Cal. Ry. Co.*, 150 Cal. 704, [89 Pac. 1093]; *Erie Ry. Co.* v. *Kane*, 118 Fed. 234, [55 C. C. A. 129]; *Herbert* v. *Southern Pacific Co.*, 121 Cal. 232, [53 Pac. 651]; *Heitman* v. *Pacific Electric Ry. Co.*, 10 Cal. App. 398, [102 Pac. 15]; *Wilkinson* v. *Oregon Short Line R. Co.*, 35 Utah 110, [99 Pac. 466]; *Bates* v. *San Pedro, etc. R. Co.* 38 Utah 569, [114 Pac. 527]; *Brown* v. *Pacific Electric Ry. Co.*, 167 Cal. 199, 204, [138 Pac. 1005].)

The accident occurred at the intersection of Sycamore Street with the railroad tracks,—one of the principal cross-

ings from the main portion to the eastern section of the town of Willows. The train which injured plaintiff was proceeding from the south and he was crossing the main line from the west for the purpose of posting a letter on the mail car of the limited train which had arrived from the north and was standing on a side track east of the main line. The mail car was in Sycamore Street. The railroad station is south of Sycamore Street, or rather its northern end projects about four feet upon the southerly part of that street, the station being on the west side of the railroad tracks. At the place where the accident occurred there are four tracks. The first of these nearest to the station is designated as the ''house track.'' the second is the main line and the two others are side tracks. The west side of the ''house track'' is 12.5 feet from the east line of the station. The distance between the ''house track'' and the main track is 26 feet from center to center, and as the width of each track is from 4.8 feet to 4.9 feet this would leave a space of a little more than 21 feet between the tracks. The sidewalk north of the depot on Sycamore Street is 12 feet wide. Extending from the freight shed of the station almost to the ''house track'' is a platform for unloading freight. It is about the height of the floor of a freight car. From the north line of the depot to the steps that lead to this platform is 56.5 feet. Sycamore Street is 80 feet wide. The side track on which the southbound train was standing was 14 feet to the east of the main line.

The accident occurred about 4 o'clock in the afternoon. Mr. Chrissinger, a man thirty-nine years of age, in perfect health, with normal faculties of sight and hearing, rode on his bicycle to the curb near the north end of the station. He jumped off the bicycle and left it against the curb. When he reached the northeast corner of the depot he stopped. ''When I got off my wheel,'' he testified, ''I looked for an approaching train that might be coming. I looked both ways, and I saw no train other than the one that was standing there. I did not hear any train. I did not hear the whistle of any train, nor did I hear any bell. Then I stopped and looked both ways to see if I could see any train, then I started in the direction of the mail car, then I again stopped and looked to see if any train was coming and I did not see any train. I then started again for the mail car and I hadn't

quite reached the mail car until the other train came and struck me. There was no noise of the train or any indication of the train coming. I never knew it was there until it was right on to me. I knew as soon as I struck the ground where I was. There was a string of box cars loading at the platform that came up almost to the door, and besides that there was two or three baggage trucks, loaded with trunks and sample cases that obstructed the view to the south. I couldn't see beyond the trucks at all. I was fifty or seventy feet north of the trucks. The train that struck me neither whistled nor rang a bell.'' Witness also said that he was 20 or 25 feet north of the south line of Sycamore Street, northeast of the station when the accident occurred. The direction taken by him from the time he dismounted from the bicycle until he was struck was northeast. The baggage trucks, so plaintiff testified, were half way between the "house track" and the main line track. Each was three and a half feet wide by ten or twelve feet long. They were loaded with baggage so that it was six or seven feet from the ground to the top of each load. Mr. Chrissinger is five feet nine inches in height. He testified that in his opinion a car or engine is about twelve feet in height from the ground. The baggage trucks were north of the box cars at the loading platform, the north end of the northerly truck being about even with the door of the waiting room, which is about twenty-two feet from the north end of the station. Mr. Corbett, another witness, located these trucks at about the same place in which plaintiff said they were situated. He said: "These trucks were standing end to end lengthwise of the track north and south." The plaintiff gave another estimate of the locations of the two trucks, stating that one of them stood quartering, the northeast corner of it being a little in front of the box car and the southwest corner perhaps a foot or a foot and a half from the east rail of the "house track," while of the other truck he testified: "Truck No. 2 was almost all of it east of truck No. 1. I cannot tell you at all whether two-thirds or three-fourths of it or all of it was east of truck No. 1. I can't tell exactly the situation now. I have given it as well as I know how." Continuing, he said: "When I got to the house track I stopped and looked around, like I usually do when crossing the railroad. I couldn't say the

exact place, or whether I had got past the house track, was about the time I crossed that track, then I looked again.

"Q. The box car was still in your way?   A. Yes, sir.

"Q. And the trucks were still in your way?

"A. Yes, sir.

"Q. You could not see anything, then?   A. No, sir."

We will not discuss the testimony of the other witnesses, as the plaintiff's own version of the accident was quite as favorable to his side of the case as that of any other witness.

The evidence fully justified the court's action in granting the motion for a nonsuit. When plaintiff stopped at the northeast corner of the depot, looking south he could see the box cars, and the baggage trucks "and a little farther off the engine of the other train." When he had crossed the "house track" on his way to the mail car he saw the same things. As the engine of the south bound train was south of the box cars and trucks and east of the main line, either he could look over the trucks or between the trucks and the box cars to the engine on the side track. If the trucks were standing in front of and north of the box cars they did not obstruct his view because he saw the engine of the south bound train over them. If they were located "about the middle of the space between the first and second tracks" or as witness Corbett said, "about six feet west of the main line, standing parallel with the track," then he had a clear view of the main line between the box cars and the trucks, and as the track was straight he might have seen an approaching train for a distance of many hundreds of feet. If the trucks were located partly in front of the box cars near the house track he had ample space between them and the main track to observe the approaching engine if he had looked. Respondents' counsel argues that, assuming the trucks with their loads to be seven feet high, the engine of the north bound train twelve feet high (these are plaintiff's own figures) and plaintiff's eyes five feet five inches from the ground (he being five feet nine inches in height) and placing plaintiff forty feet from the trucks he could have seen the engine one hundred and sixty-six feet away as he looked over the top of the trucks, at fifty feet he could have seen the engine two hundred and eight feet away, and at sixty feet he could have seen it two hundred and ninety-one feet away. We think these deductions are not only logical but inevitable from the testimony in

the case, if we assume that the trucks would be directly in line between plaintiff and the north bound train. In any view of the testimony we are forced to conclude that had plaintiff used the slightest care the accident would not have happened. True it is that we have his own statement that he looked and listened but did not see or hear the approaching train, but where, as here, the established facts and conditions make it plain that, by looking and listening he must have observed the approach of the train, his testimony that he looked and listened but did not see or hear is not enough to support a verdict in his favor. (*Zibbell* v. *Southern Pacific Co.,* 160 Cal. 241, [116 Pac. 513].)

A person approaching a railway track, which is itself a warning of danger, must take advantage of every reasonable opportunity to look and listen. Undoubtedly the question of contributory negligence or freedom from it is ordinarily one for the jury, but where, as here, the standard of conduct is so obvious as to be applicable to all persons, and the plaintiff has failed to measure up to that standard under the circumstances shown, he is not entitled to have his case go to the jury. (*Hamlin* v. *Pacific Electric Co.,* 150 Cal. 779, [89 Pac. 1109].)

The judgment and order are affirmed.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.

Lawlor, J., dissented from the order denying a hearing in Bank.