[Civ. No. 41. Fourth Appellate District.—January 29, 1930.]

GEORGE WHITE, Respondent, v. R. M. DAVIS et al., Appellants.

534

Swing & Wilson, Gilligan & Cobb and Nichols, Cooper & Hickson for Appellants.

H. L. Thompson and B. P. Gibbs for Respondent.

BARNARD, J.—This is an appeal from a judgment, based upon the verdict of a jury, in a personal injury action. The accident out of which the action arose occurred on the night of June 1, 1925, between midnight and one o'clock A. M. on the main traveled state highway between Los Angeles and the Imperial Valley, generally known as the Valley Boulevard, and at a point just within the westerly corporate limits of the city of Ontario. The total width of the street at the point of the accident was eighty feet, but there was a drainage ditch on each side of the highway. There was a pavement sixteen feet in width, with a three-foot oiled shoulder on each side of the pavement, and four feet of graded dirt surface between the shoulder and the ditch on each side of the road, giving a total width of thirty feet of roadway available for travel. While proceeding in a westerly direction immediately prior to the accident, at a point nearly a mile east of where the accident later occurred plaintiff passed the truck which was involved in this controversy. The truck was traveling westward at from twelve to fifteen miles an hour. Shortly after passing the truck, plaintiff observed a Ford car which had stopped on the highway, with neither front nor rear lights. Plaintiff stopped his own car about thirty to thirty-five feet in front of the Ford, and, leaving both his headlights and tail-light burning, walked back to the standing car, where he found a lady, Mrs. De Frates, who told him her lights had gone out. He stepped up beside the hood of the Ford and attempted to fix the lights for her. The Ford was headed west, and was standing mostly on the pavement, its left wheels being about four feet south of the north edge of the paved portion of the highway.

Plaintiff testified that as he walked back to the Ford he could see the truck coming, a little over a quarter of a mile away; that it was a few minutes, he thought between three

and five minutes, after he left his car before the truck came up, and that while he was working on the car he looked up and saw the truck again. He estimates the distance between himself and the truck, at that time, at around 100 to 150 yards. At that time Mrs. De Frates was standing about four feet from the Ford toward the center of the highway, and plaintiff warned her, saying, "Look out for that truck, he almost got me a while ago." Mrs. De Frates stepped behind the Ford; the plaintiff turned around, resumed his work on the Ford and as he testified, "as I turned around the truck was on top of me you might say, within a few feet. I couldn't do anything and couldn't get out the way and throwed myself over next to the Ford as best I could, grabbing hold of the windshield and pulled myself over. The truck was hit and I was hit. I meant the Ford was hit and I was hit." The truck struck the rear left corner of the Ford, and the plaintiff was knocked down and his left leg crushed in such a manner that it was amputated four days later. The plaintiff testified that the last time he saw the lights of the truck before the impact he thought the truck was slightly to the left of the road, that is, not entirely on its own right-hand side. He also testified that the truck appeared to be going directly toward him; that he saw the truck, heard it, and that he did not pay any particular attention to it. The driver of the truck testified that when he was about 75 to 100 yards away he observed plaintiff's car standing on the north side of the highway and that he could see the tail-light and the light from the headlights; that he did not see the Ford coupe which was between him and the car of the defendant; that he did not look close, but saw the lighted car and nothing else; that he started to turn his truck over to the left at what he thought was twenty-five or thirty feet before he reached plaintiff's car, and suddenly collided with the Ford car; that before he started to turn to the left the right wheels of his truck were twelve inches from the right-hand side of the pavement; that his truck was equipped with electric headlights, and that he could see probably 100 feet ahead as he was approaching the scene of the accident. At another time he testified that his headlights were burning good and he could see the pavement and obstacles ahead of him for a distance of perhaps 200 feet. There was a conflict in the

evidence as to the degree of darkness that night. Plaintiff testified there was a full moon and that it was as light as day. There was evidence that the moon was in its first quarter and that it set at 2 o'clock that morning; also, Mrs. De Frates testified she was afraid to drive her car farther off the pavement, as she could not see how close she was to the ditch. The driver of the truck testified that the Ford had no lights whatever; that he did not see the Ford or the plaintiff because he was watching the lights of plaintiff's parked machine and making ready to pass around it, and that that machine was standing at a slight angle to the right. He testified that he was wide awake at the time, but he admitted that he had been on this trip for more than twenty-four hours immediately preceding the accident, during which time he had been either driving or loading his truck, except that he had had about one hour of sleep about 3 o'clock the afternoon before. He also said he had come through a wind and sand storm that afternoon and that his windshield was somewhat dusty and scarred. It is admitted that the speed of the truck immediately preceding the accident was fifteen miles per hour. The plaintiff testified he saw no automobiles approaching just before the accident other than the truck in question. Mrs. De Frates testified it was only a second or two at the most after the plaintiff warned her until the truck struck the Ford. The truck driver testified as follows: "Q. And immediately prior to the accident you could see through your windshield, in the condition that it was, with your lights in the condition that they were, an object ahead of you for a distance ahead of you on the highway for a distance of 100 feet, is that true? A. Yes, sir. Q. How fast were you going? A. About 15 miles an hour. Q. Then, if you could see an object on the highway for 100 feet ahead of you, why did you not see this Ford coupe? A. It was setting in between those lights, and I saw the one car there, and I never looked for any more, for there was no lights, only the one set of lights is all I could see, and I couldn't see anybody. Q. The lights you speak of were headed away from you, were they not? A. No, sir, they were headed angling across the road. Q. Which way? A. Kind of north and south. Q. That is to the right hand side? A. The tail lights were to

the left hand side and the headlights were to the right. Q. This car was ahead of this Ford coupe wasn't it? A. It was ahead of it, but the coupe stood right between the lights.''

Appellants insist that the judgment in favor of the plaintiff is not supported by the evidence. It is their contention that since the driver of the truck was proceeding on his own right side of the highway at a reasonable rate of speed, and since the plaintiff voluntarily placed himself on the highway in the path of the truck without giving any warning of his presence, no negligence on the part of the driver of the truck is shown by the evidence. As was pointed out in the case of *Hatzakorzian* v. *Rucker-Fuller Desk Co.,* 197 Cal. 82 [41 A. L. R. 1027, 239 Pac. 709, 713], a pedestrian has the same right to travel upon a public highway as has the driver of an automobile, subject to this right being exercised with a reasonable amount of care, under existing circumstances. And a driver of an automobile may not proceed under the assumption that so long as he is on the right side of the highway and proceeding at a low rate of speed the path in front of him will remain clear. It is incumbent upon the driver of an automobile to keep control of his automobile at all times, and to use reasonable care and caution under the circumstances and conditions of the particular time. There was evidence here that the driver of the truck had been driving and loading his vehicle for more than twenty-four hours next preceding the accident, with only one hour's sleep. It was also in evidence that some miles back he had passed through a sandstorm, and his windshield was dusty and scarred and had not been wiped off. There was conflicting evidence as to whether the night was very light or very dark. The driver testified he did not see the Ford, or the plaintiff, as his attention was upon the lights of the plaintiff's car, which was parked slightly in advance of the Ford. Whether, in the exercise of reasonable care, he should have seen these objects, or whether, in the condition thus created, the Ford was so obscured or so blended with the plaintiff's machine, that it could not be seen by the driver of the truck in the exercise of reasonable diligence, are questions of fact.

''The rule by which appellate courts must be guided in passing upon the question whether findings of fact or ver-

dicts of juries are sufficiently supported by the evidence is this: 'That where an honest difference of opinion between men of average intelligence can arise as to the effect of the evidence—that is, if the evidence is such as that different conclusions upon the matter can rationally be drawn from the evidence—then the case presented is one for the jury or the court, if the questions of fact be submitted to its arbitrament.' (*Firth* v. *Southern Pac. Co.*, 44 Cal. App. 511, 514 [186 Pac. 815, 816].)''

In view of all the circumstances here present, we are of the opinion that the question as to whether or not the driver of the truck was guilty of negligence, was one of fact for the jury, and that the jury's finding of negligence on his part, is sufficiently supported by the evidence.

It is next urged that the plaintiff was himself guilty of contributory negligence, as a matter of law. This claim is based upon the following facts as testified to by the plaintiff: that he had passed the truck shortly before he saw the unlighted Ford standing on the highway; that after he had parked his car and started back to the Ford, he saw the truck approaching, it being then between a quarter and a half mile away; that he engaged in attempting to repair the Ford while it was parked upon a main traveled highway, without lights; that he again saw the truck approaching when it was 100 to 150 yards away; that the approach of the truck at that time was such that it caused him to warn Mrs. De Frates to move off the highway; that thereafter he paid no further attention to the truck, although he knew it was coming toward him, and that it was headed straight for him; and that during all of this time he was working on the south side of the Ford car, standing right up to the edge of the car, bending over the front fender, where he could not be seen.

In support of their theory that the plaintiff was guilty of contributory negligence, as a matter of law, defendants cite a number of cases. In *Mayer* v. *Anderson*, 36 Cal. App. 740 [173 Pac. 174], it was held to be negligence, as a matter of law, where the plaintiff walked out into a crossing, in heavy traffic, without glancing to either side and being, up to the moment of impact, absolutely oblivious to an approaching automobile. In *Moss* v. *Boynton Co.*, 44 Cal.

App. 474 [186 Pac. 631, 632], the plaintiff stepped into the street without looking in the direction from which traffic was first to be expected. This was held to be negligence, as a matter of law. In *Ogden* v. *Lee*, 61 Cal. App. 493 [215 Pac. 122], the plaintiff was held guilty of contributory negligence where he saw a light which he thought was standing still, and then proceeded to cross the street with an umbrella obstructing his view, without any precaution to see if any machine was coming. *Atkins* v. *Bouchet*, 65 Cal. App. 94 [223 Pac. 87], is a similar case. The case of *Chrissinger* v. *Southern Pac. Co.*, 169 Cal. 619 [149 Pac. 175], and the case of *Klusman* v. *Pacific Electric Ry. Co.*, 190 Cal. 441 [213 Pac. 38], are both cases where no precautions were taken by the plaintiff. In *Reynolds* v. *Los Angeles Gas & Electric Co.*, 162 Cal. 327 [Ann. Cas. 1913D, 34, 39 L. R. A. (N. S.) 896, 122 Pac. 962], the court holds that the temporary forgetfulness of a known danger, which is not induced by some sudden and adequate disturbing cause, is itself negligence, as a matter of law. In *Finkle* v. *Tait*, 55 Cal. App. 425 [203 Pac. 1031], the court held that the only possible view of the evidence was that the plaintiff either did not look at all, or if he did, that he saw the automobile and carelessly walked in front of it; his act being negligence, as a matter of law.

In opposition to the claim that he was guilty of contributory negligence, the plaintiff cites the following cases: *Graybiel* v. *Auger*, 64 Cal. App. 679 [222 Pac. 635]; *Deitchler* v. *Ball*, 99 Wash. 483 [170 Pac. 123]; *Coffman* v. *Singh*, 49 Cal. App. 342 [193 Pac. 259]; *Blackwell* v. *Renwick*, 21 Cal. App. 131 [131 Pac. 94]; *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, *supra*. In *Moss* v. *Boynton Co.*, *supra*, the court said:

"Contributory negligence 'is a question of law only when the evidence is of such a character that it will support no other legitimate inference than that in the one case the plaintiff was guilty of contributory negligence. . . . When the evidence is such that the court is impelled to say that it is not in conflict on the facts, and that from those facts reasonable men can draw but one inference, and that an inference pointing unerringly to the negligence of the plaintiff contributing to his own injury, then and only then,

does the law step in and forbid plaintiff a recovery. . . . Even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury.' (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237, 240 [116 Pac. 513]; *Wing* v. *Western Pac. Co.*, 41 Cal. App. 251 [182 Pac. 969].) And the question of contributory negligence must be determined without regard to any negligence on the part of defendant. (*Hutson* v. *Southern Cal. Ry. Co.*, 150 Cal. 701, 703 [89 Pac. 1093].)''

In *Mann* v. *Scott*, 180 Cal. 550 [182 Pac. 281, 282], where there was a city ordinance requiring automobiles to stop while a street-car was receiving or discharging passengers, and where the plaintiff was injured while attempting to board a car, the court said:

''The question of negligence, under the usual rule of ordinary care that devolves upon foot travelers, must be examined in the light' of all the attendant circumstances, one of which may be knowledge of the existence of a statute or an ordinance prescribing certain fixed regulations for observance by automobile drivers. And it may be that if the jurors in this case rejected, as improbable, respondent's testimony that she looked and saw no approaching automobile, they, nevertheless, concluded—as well they might—that if she did see the automobile before leaving the sidewalk, she reasoned that its driver would comply with the city ordinance, referred to in the court's instructions, requiring an automobile traveling behind a street-car to stop ten feet in the rear of the car if it stops to let off or take on passengers, until the passengers have safely alighted from or boarded the car. Whether, if she saw the automobile, respondent would have been warranted in going toward the street-car without further watching the automobile approach, relying upon a compliance by the appellants with the requirements of the ordinance, was a question upon which men's minds might well differ, and hence it was properly a case for the jury. . . . ''

In *Carbaugh* v. *White Bus Line*, 51 Cal. App. 1 [195 Pac. 1066, 1067], the plaintiff at an intersection saw the defendant's stage approaching, but proceeded to cross into the intersection. In discussing the question of contributory negligence the court said:

542

"The first contention of the appellant herein is that the plaintiff, D. C. Carbaugh, as the driver of said automobile, was guilty of contributory negligence as a matter of law in entering upon and attempting to cross said boulevard after observing the defendant's stage approaching its point of intersection with the Mission Drive. This contention is absolutely without merit. The plaintiff D. C. Carbaugh, as he approached the intersection of these two streets, was driving upon the right side of the Mission Drive at a rate of speed permitted by law, and had, under the provisions of the Motor Vehicle Act, the right of way across Pomona Boulevard in advance of the defendant's stage approaching thereon. Whether or not after observing the approach of said stage and its position upon said boulevard, and the rate of speed at which it was traveling, the said plaintiff was justified in proceeding upon his rightful way across said boulevard in advance of said stage was clearly a question of fact for the jury. (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237 [116 Pac. 513]; *Scott* v. *San Bernardino Valley etc. Co.*, 152 Cal. 604 [93 Pac. 677]; *Commonwealth Bonding etc. Co.* v. *Pacific Electric Ry. Co.*, 42 Cal. App. 573 [184 Pac. 29]; *Robinson* v. *Clemons,* 46 Cal. App. 661 [190 Pac. 203]; *Baker* v. *Western Auto Stage Co.,* 48 Cal. App. 283 [192 Pac. 73].)''

■ The question as to whether a given state of facts constitutes contributory negligence, as a matter of law, or whether it is a matter that should go to the jury, as a question of fact, is often a close one. The solution depends entirely upon the existing circumstances in each particular case. Unusual circumstances may determine in a given case whether or not reasonable minds might legitimately draw different conclusions on the question of negligence. ■ There seems to be a general rule running through the cases where a pedestrian, or one standing on a highway, is injured by an automobile, which usually determines whether the question of contributory negligence is one of law, or of fact. Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, where he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or seeing one, erroneously misjudges its speed

or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury.

While a somewhat close question is presented by the facts in the instant case, it can hardly be said that the plaintiff here did not take *some* precaution, or that he did not have some reason for assuming he could avoid injury. He stood as close as possible to the Ford on which he was working; he warned the lady he was trying to assist to step back so that the way would be more nearly clear; and he noted that there was plenty of room for the defendant to pass on the other three-fourths of the highway. He also testified that when he last saw the truck he thought it was slightly to the left side of the road. He may have thought it was already turning over to the other side of the road, and thus misjudged its position. He may have assumed he could avoid injury, since he thought the lights on the truck were sufficient to reveal the Ford and himself, and that the driver would turn out in time. Whether he could, or should, have moved the machine off the highway, in the time available, may be a debatable question. It was an emergency, in which he was attempting to assist a lady in trouble in the middle of the night. While it would now appear that the highest degree of caution might have saved him from injury, what he, as a reasonable man, was justified in doing on the spur of the moment, is a matter upon which reasonable minds might well differ. Under all of the circumstances, we are of the opinion that the question raised, as to contributory negligence on the part of the plaintiff, was one for the jury.

Since the questions of negligence on the part of the defendant, and contributory negligence on the part of the plaintiff were properly submitted to the jury, the matter of instructions is important. A number of assignments of error, in connection with the giving or refusing of instructions, are set forth. We deem it necessary to comment only on a few of them. The court gave the following instruction:

"I charge you that under the Motor Vehicle Act of this state which was in full force and effect at the time of this accident, the driver of an automobile in relation to the rights of others traveling upon the highway was required to drive his vehicle in a careful and prudent manner and at a rate

of speed not greater than is reasonable and proper and under no circumstances to exceed thirty-five miles per hour, and the law requires of him the necessity of making certain that foot passengers were aware of the rearward approach of the vehicle; and that the vehicle itself is at such a distance from the pedestrian as to avoid running over him in his sudden panic from surprise at knowledge of its unexpected approach, and finally, that the vehicle is under such control as that it may be stopped promptly.''

It is, of course, the law that the driver of an automobile must anticipate the presence of other persons upon the highway. (*Hatzakorzian* v. *Rucker-Fuller Desk Co.*, *supra*.) In the case just cited, the court held that the driver of the automobile should have known of the presence of the pedestrian, and that blinding headlights were no excuse, as the pedestrian was on the right side of the road, where he had a right to be. While this is the law, it applies more particularly to cases where the driver of the automobile, either knew or should have known of the presence of the other party. In effect, the jury was here instructed that the law required of the truck driver in this case, that he make certain that the plaintiff was aware of his approach. We think that reasonable diligence, rather than certainty, was required. In view of the fact that the circumstances here were peculiar; that the defendant was running at a low rate of speed on the right side of the road; that he saw an obstruction, being plaintiff's parked and lighted car; that he was turning out in an effort to pass the obstruction he saw; and in view of the doubt as to whether or not the position and effect of the lights on plaintiff's car were such as to have caused the Ford to be so blended with the plaintiff's car as to have reasonably prevented the defendant from seeing the Ford, or the plaintiff, an instruction that the law placed upon the defendant the absolute necessity of making certain that foot passengers were aware of his approach, was hardly justified. It left out of consideration the question as to whether the driver should have known of the presence of the plaintiff, or whether or not the plaintiff himself knew of the approach of the vehicle, and was oblivious thereto. We think that under the conditions here present, the instruction in question should have been qualified in the manner indicated.

■ The court also instructed the jury: "I instruct you that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise, it is not negligence to assume that he is not exposed to danger which comes to him only from violation of law or duty by such other person."

While this is also a general rule, it should have also been qualified under the circumstances of this particular case. The rule does not apply to "every person" but applies to one who is himself not negligent. (19 Cal. Jur. 596, and cases there cited.) Reliance upon this presumption will not excuse one who is himself negligent, for such a rule would abrogate the doctrine of contributory negligence. (*McPherson* v. *Walling*, 58 Cal. App. 563 [209 Pac. 209].)

■ A person may not blindly rely upon the unaided care of another, but must use reasonable care to observe the conduct of such other person, so far as this may affect his own safety. (*Simonsen* v. *L. J. Christopher*, 186 Cal. 786 [200 Pac. 615] ; *Harris* v. *Johnson*, 174 Cal. 55 [Ann. Cas. 1918E, 560, L. R. A. 1917C, 477, 161 Pac. 1155].) Whether or not reasonable care is used under the circumstances, in relying upon this presumption, is a question for the jury. (*Mann* v. *Scott, supra; Scott* v. *San Bernardino Valley Co.*, 152 Cal. 604 [93 Pac. 677].)

■ The effect of this instruction was to tell the jury that in this case the plaintiff had a right to rely upon the rule stated, irrespective of whether or not he himself was negligent, and that he had a right to assume that he was not exposed to danger, even though he might know he was in a perilous position. The negligence of the defendant, and the contributory negligence of the plaintiff, were questions which should have been left to the jury, and this instruction should not have been given, without qualification. It is not a necessary inference from the facts in this case that the danger to be anticipated could come only from a violation of law, but such danger might come from a variety of other causes. Respondent justifies this instruction by the argument that the plaintiff had a right to be where he was, and that he had a right to assume that the lights of the truck would be sufficient for the driver of the truck, if he was obeying the law, to observe the Ford in time to clear it. The vice of

the instruction is that it practically assumes, what respondent assumes in this argument, that the plaintiff had a right to be where he was without taking additional precaution. Whether or not he had this right, and also the right to assume that the driver of the truck would see him, were questions for the jury, and may not be assumed as true.

The court also instructed the jury as follows: ''I instruct you that under the Motor Vehicle Act which was in full force at the time of this accident it is provided that, 'any vehicle overtaking another vehicle proceeding in the same direction shall pass at least two feet to the left thereof, and shall not again be driven to the right side of the highway until reasonably clear of such overtaken vehicle.' ''

This instruction is not strictly applicable to the facts of this case, as there was no evidence in connection with this accident of any vehicle overtaking another vehicle which was ''proceeding in the same direction.'' In effect, it instructed the jury that the law imposed the duty upon the driver to clear the parked Ford by at least two feet, irrespective of the circumstances, and irrespective of whether he knew of the presence of the Ford upon the highway, or as a reasonable man, under the circumstances, should have known thereof. The question of negligence on the part of the driver depended upon whether or not he used reasonable care under the circumstances disclosed by the evidence, and not upon whether or not he complied with this section of the California Vehicle Act.

The court also instructed the jury as follows: ''I instruct you that under the Motor Vehicle Act which was in force at the time of this accident, the defendants were required to carry at the front of their truck at least two lighted lamps of sufficient candle power to reveal any object, vehicle or substantial object on the road straight ahead for a distance of seventy-five feet therefore, in this case, if you find from the evidence that the defendants failed to have headlights on their truck of sufficient candle power to reveal the plaintiff at a distance of seventy-five feet, then I charge you that a violation of this law would be negligence as a matter of law, and if you find from the evidence that the defendants' negligence proximately contributed to the happening of the accident, no matter how slight, then your verdict will be in favor of the plaintiff and against the

defendants, if you further find that at that time the plaintiff was in the exercise of ordinary care with regard to his own safety and was without contributory negligence on his part.''

The jury were thus instructed that the law required the defendants to have lights of sufficient candle-power to reveal any object on the road straight ahead, for a distance of seventy-five feet, and also they were instructed that if the defendants failed to have headlights sufficient to *actually reveal* the plaintiff at a distance of seventy-five feet, this constituted negligence, as a matter of law. There was no law to this effect in California at that time. The instruction is apparently based upon the California Vehicle Act of 1919 [Stats. 1919, p. 191]. This accident occurred on the night of June 1, 1925. At that time the California Vehicle Act of 1923 was in force. This act contains no such requirement. (See Gen. Laws, 1923, Act 5128.) The evidence shows the truck involved in this action was equipped with electric headlights. This instruction, in effect, told the jury the defendants were guilty of negligence, as a matter of law, if his lights did not, in fact, reveal the plaintiff to him. The evidence showed that the plaintiff was not actually revealed to the defendants prior to the collision, and the instruction was misleading and prejudicially erroneous. (*Wiley* v. *Cole*, 67 Cal. App. 762 [228 Pac. 550].) The jury were here instructed that the law required that the defendants have headlights that *must* have revealed the plaintiff at a distance of seventy-five feet, irrespective of where the plaintiff was, and irrespective of what might have interfered with his having been so revealed. In our opinion, this instruction not only was a misstatement of the existing law, but it concerned a matter so closely related to the questions of fact involved, that it may have had a not inconsiderable effect upon the jury in reaching their verdict.

The act of 1923 established a different test than distance for lights upon motor vehicles. Under that act, lights are required to be, not only sufficient for the purposes of the driver of the vehicle, but also such that they will not unduly interfere with the vision of approaching drivers. The only requirement of this act, in regard to the amount of light, is that it shall be ''an ample driving light.'' What constituted an ample driving light, under the circumstances

was for the jury to decide, and it was erroneous for the court to instruct them that this particular distance was the test. A number of other circumstances are presented by the evidence which should have been considered by the jury, in passing upon whether or not there was any negligence on the part of the defendant.

Respondent argues that even if this instruction was erroneous, it was harmless. We cannot agree with this point of view. Irrespective of whether or not the driver of the truck could see more than seventy-five feet ahead of him, it was in evidence that he did not see the plaintiff, and the jury were practically instructed that this was negligence, as a matter of law. Not only this, but the question of whether or not the plaintiff was guilty of contributory negligence depended upon a number of circumstances, among which are the acts and conduct of the defendant himself. If the defendant had improper lights, and thus deceived the plaintiff, who had acted upon the belief that he had proper lights, this would materially affect the question of contributory negligence. The jury might draw the inference that the reason the defendant did not see the plaintiff was because he did not have lights that conformed to this instruction, and they might also draw the inference that if he had had lights which complied with this instruction, this alone would have justified the plaintiff in remaining where he did, upon the highway.

It is true that there were other instructions submitting the question of contributory negligence to the jury, but this instruction practically told the jury that the defendant was negligent if his lights did not actually reveal the plaintiff to him, and this implies that the plaintiff was justified in relying absolutely upon being seen by the defendant. We think the general instructions on contributory negligence did not cure the error in the last quoted instruction, and that the giving of the same was prejudicial to the defendants. The question of negligence and contributory negligence were, under the peculiar circumstances of this case, very close questions and should have been left entirely to the jury. It is impossible to say that the instruction here referred to had no part in weighing the balance in favor of the plaintiff and against the defendants.

This action was brought against R. M. Davis and H. E. Smith, doing business under the fictitious name and style of Coachella Valley Transportation Company, and also American National Bank of Pomona, a corporation. The jury brought in its verdict in the same form, against R. M. Davis and H. E. Smith, doing business under said fictitious name, and also against American National Bank of Pomona, a corporation. The answer of the American National Bank of Pomona alleged, among other things, that R. M. Davis and H. E. Smith were conducting and operating said business as trustees for the benefit of said Bank. It appears that a franchise to act as common carriers had originally been issued by the Railroad Commission to H. L. Boutell and H. S. Fuqua, permitting them to operate as the Coachella Valley Transportation Company. These parties having become indebted to the said bank, attempted to turn over the business to the bank, and Davis and Smith were appointed by the bank under an agreement with the owners of the line, to conduct the business and protect the interest of the bank. On January 22, 1923, the two owners of the line, and the said Davis and Smith, applied to the Railroad Commission for permission to sell and transfer said business to said Davis and Smith, as trustees, for said bank. Boutell and Fuqua had theretofore given an assignment to the bank. It was stipulated between the parties hereto that, at the time of the accident in question the truck was being driven by one George Scanlon, who was at that time the agent and employee of the Coachella Valley Transportation Company, and that he was acting within the scope of his authority as such agent and employee. It appears that the assignment made to the bank was taken subject to the approval of the Railroad Commission. The subsequent order of the Railroad Commission contained the following:

"Applicants Davis and Smith sought the transfer of the certificate rights to them as trustees for the American National Bank for the purpose of finding a competent purchaser for the line. Each stipulated, however, that they would accept the transfer to themselves jointly and not as trustees and assume personal responsibility. Mr. Davis is vice president of the American National Bank and Mr. Smith is a hardware merchant. Mr. Smith will continue active management."

"Order. H. L. Boutell and H. S. Fuqua, doing business under the fictitious name Coachella Valley Transportation Company, having made application to the railroad commission for approval of the sale and transfer of all their certificate rights to R. M. Davis and H. E. Smith, as trustees, a public hearing having been held, the matter having been duly submitted and now being ready for decision:

"It is hereby ordered that the application herein be granted for the sale and transfer of said certificate rights to R. M. Davis and H. E. Smith, jointly as individuals, and not as trustees for any person whatever, upon the following conditions:

"5. No vehicle may be operated by the applicants R. M. Davis and H. E. Smith unless such vehicle is owned by them, or is leased by them for a specific amount on a trip or term basis, the leasing of the equipment not to include the services of a driver, or operator of leased cars. All employment of drivers or operators of leased cars shall be made on the basis of a contract by which the driver or operator shall bear the relation of an employee to the transportation company."

As respondent says in his brief, it was necessary to let the case go to the jury on the question of ownership of and who was operating the truck line. Respondent justifies the judgment against the bank by the evidence which shows that the business was assigned to the bank; that the individual defendants accepted the operation thereof only for the bank; that any deficit in the expense of operation was paid by the bank; that Mr. Davis testified that he and Smith operated the line in behalf of the bank, Smith as manager, and Davis as adviser; that Davis testified that after the order was issued by the Railroad Commission, he and Smith agreed with the bank that they were to operate it for the bank, and that they should have no personal responsibility. Smith testified that he was manager; that the bank paid him; that he was operating the line for the bank; and that he worked for the owners, on a salary. Respondent argues that the bank was therefore liable while they held the assignment, and that the evidence shows that Davis and Smith were operating the line for the bank and for no one else. On the other hand, they justify the verdict against Davis and Smith on the ground that the records of the Railroad

Commission showed that these two had assumed personal responsibility. Respondent therefore argues that it was for the jury to determine who, in effect, were the owners and operators of the truck line. We think this contention is correct, but it does not clearly appear that both the bank and the individuals can be held liable under the evidence. They attempt to justify the judgment against the two individuals by the statement of the Railroad Commission that they have accepted liability, but if the order of the Railroad Commission was conclusive as to liability then the individuals would be responsible and the bank would not. If the two individuals were, in fact, merely employees, then they were coemployees of the driver of the truck, and not being directly involved in any negligence of the driver, if such negligence there was, they would not be liable.

While the jury has apparently found that Davis and Smith were the ones doing business under the fictitious name mentioned in the stipulation, they have also found against the bank, and it is not clear whether it was their intention to find that Davis and Smith alone were operating the truck line, or whether they considered the bank as also a party to this operation. Under our view of the case, it will have to be reversed, and we mention this phase of the case in order that it may be guarded against on another trial.

One other point remains to be considered. Appellant urges that the damages are excessive. The jury awarded a verdict of $30,000. The evidence shows plaintiff's leg was amputated slightly below the knee four days after his injury. His total expense as shown by the evidence was $605. Plaintiff was an employee of a gasoline filling station and received $140 a month. While we are aware of the rule that damages for personal injuries cannot be held excessive, as a matter of law, simply because the amount may be larger than ordinarily allowed in such cases, the amount named in the verdict of the jury is large enough to emphasize the fact that the errors herein mentioned were prejudicial to the defendant. Respondent calls attention to section 4½ of article VI of the Constitution, to the effect that a judgment should not be reversed unless an examination of the entire case discloses the fact that the errors

complained of have resulted in a miscarriage of justice. In our opinion the amount of this verdict furnishes an additional reason for the action we feel compelled to take herein.

For the reasons given, the judgment is reversed.

Sloane, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 24, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 27, 1930.

All the Justices concurred.