[Civ. No. 13455.   Second Dist., Div. One.   June 8, 1942.]

LEENDERT NEDERVELD et al., Respondents, v. BOH-
    LANDER TRUCKING COMPANY et al., Defendants;
    JACOB BOHLANDER et al., Appellants.

Donald E. Ruppé, C. W. Bowers and Joseph L. Fainer for
Appellants.

Albert E. Wheatcroft for Respondents.

YORK, P. J.—This is an appeal by defendants from a
judgment entered pursuant to a verdict of the jury awarding
damages to plaintiffs for injuries to person and property aris-
ing out of a collision between plaintiffs' automobile and de-
fendants' truck.

Appellants' sole contention upon this appeal is that re-
spondent Leendert Nederveld "was negligent as a matter of
law in driving his automobile on the highway and not looking
in the direction he was proceeding."

The accident occurred in the late afternoon of August 21,
1940, at the intersection of Cerritos Avenue and Lakewood
Boulevard in the county of Los Angeles.  According to a copy

of the map used during the trial delineating the situs of the collision, Cerritos Avenue runs due north and south; Lakewood Boulevard runs northeasterly and southwesterly, forming a so-called "flatiron" corner upon which a service station is located.

Lakewood Boulevard is about 70 feet in width and is divided into four lanes, two of which consist of asphalt shoulders and the other two are made of concrete.

Appellant Willey, an employee of defendant trucking company driving a semi-trailer and truck loaded with flat steel was on his way to make a delivery to the Vultee Aircraft plant in the immediate vicinity, and stopped at the service station to get some water. Because he was unable to find a place to turn the truck on Cerritos Avenue, he backed the truck out of the station at a slow rate of speed onto Cerritos around the flatiron corner toward Lakewood. He straightened out and drove to the middle of Cerritos at which point his truck was pointed due east and west. He then continued to back his truck until the rear end stood squarely upon the asphalt shoulder on the east side of Lakewood Boulevard.

In the meanwhile, respondent Leendert Nederveld was driving his Chevrolet automobile northerly on Lakewood Boulevard in the middle of the concrete lane adjacent to the asphalt shoulder on the east or right side of the boulevard at a speed of approximately 25 to 30 miles per hour. His wife, respondent Gertrude Nederveld, was seated beside him to his right, and his granddaughter was seated in the rear of the car. Said respondent testified through an interpreter of the Dutch language that when he was within four or five car lengths south of Cerritos Avenue "I looked (to see) if nothing came out of the street (Cerritos) and then I went ahead"; that he saw no cars moving on Cerritos and when he reached the intersection "the truck backed into my car . . . the car capsized, turned over"; that the right side of his car came in contact with the back of the truck. Upon cross-examination, said witness testified: "Q. Now, Mr. Nederveld, you testified that this (truck) backed out and hit your car. You never saw that (truck) back out and hit your car, did you? A. No, sir. Q. As a matter of fact, from this point N1 (five car lengths south of the corner) up to this point N2 (point of impact) you never saw any car whatsoever, did you? A. No, sir. Q. And were you looking? A. Yes, sir. Q. And was there anything to obscure your view from this point N1

to this point N2? A. No, sir. Q. You had a clear, open and unobstructed highway from this point N1 to N2, is that right? A. Yes, sir. Q. And it was broad daylight, wasn't it? A. Oh, yes. . . . Q. And the first thing you knew is that your car came into collision with something in the road, isn't that right? A. Yes, sir. . . . Q. And you are sure it was in that second lane of traffic, is that right? A. Yes, sir. . . . My car was in the middle of the lane. . . . Q. And you were driving the car, were you? A. Yes, sir. Q. Where was your wife seated, Mr. Nederveld? A. On the right side. Q. What was she doing? A. She was knitting . . . a sweater. . . . Q. How do you know she was doing that? A. She started to do it when I started to go away from home. Q. And then you never looked at her again after that? A. No. . . . Q. Now after you looked to your right when you were at N1, did you keep on looking to your right there all the time as you proceeded from N1 to N2? A. Yes, sir. Q. As you were looking to your right from that point N1 to N2, did you shift your head at any time to look any other place? A. No, sir. Q. Then as I understand it, you kept looking to your right all the time? . . . A. Yes. Q. And you were still looking to your right when the accident happened, is that right? A. I couldn't say that because the accident happened so quick, it was just bang! Q. Well, that may be so, that the accident happened quick, because it doesn't take long to travel 65 or 100 feet, but what I am trying to say is, were you still looking to your right at the time the accident happened? A. I couldn't say that. Q. You don't know where you were looking, is that right? A. At the moment of the accident, no. Q. But up to that point you were looking to your right, is that right? A. Oh, yes.''

Apparently, because of the proximity of the aircraft plant, cars were parked solidly on both sides of Cerritos Avenue at an angle from the curb, as well as on the service station grounds and along the east side of Lakewood Boulevard abutting the service station, all of these being to the right of respondent as he approached the intersection.

The witness Coates, assistant manager of the service station, observed the truck back out of the service station and testified it had stopped on Lakewood three or four seconds before the accident happened. He further testified that he also observed the Chevrolet traveling north on Lakewood Boulevard at a speed of from 35 to 40 miles per hour; that he saw the driver

of the automobile and "it looked as if he was looking down in his wife's lap."

It was variously testified that from 3 or 4 to 60 seconds elapsed between the time appellant Willey stopped backing his truck and the moment of impact.

Appellant Willey testified he could see 150 feet south on Lakewood as he backed out of the service station, and that when he reached Lakewood he saw respondents' automobile coming north on Lakewood toward Cerritos at a distance of about 200 feet; that he then continued backing the truck 5 or 10 feet before he stopped; that about half a minute elapsed between the time he stopped and the moment of impact. However, when put to a test on the witness stand as to the actual time which elapsed, the trial court estimated that it was about 5 seconds.

Appellants' negligence is not questioned, the only point, as heretofore stated, is that respondent Leendert Nederveld was negligent as a matter of law in continuing to look to the right for a matter of four or five car lengths as he approached the intersection.

An examination of the record, including the map of the situs of the collision, discloses a situation which required a driver to look to his right as he traveled northerly on Lakewood Boulevard approaching its intersection with Cerritos Avenue. Cerritos does not cross Lakewood, but intersects it at an angle forming the above mentioned flatiron, upon and around which many automobiles were parked. Therefore, it would be only natural for a reasonably prudent person to anticipate that potential danger lurked to his right at the point in question rather than to his left, where the boulevard ran straight and free of intersecting streets or other obstructions.

It was necessary for respondent Leendert Nederveld to testify with the help of an interpreter, which is always difficult. Nevertheless, respondent testified upon cross-examination that when he was four or five car lengths from Cerritos *he looked but saw no traffic on Lakewood;* that he then looked to his right, which was toward Cerritos and the service station with the cars parked in and around it; and that he continued to look to his right until the point of impact, but did not observe appellants' truck.

In *Hamlin* v. *Pacific Electric Ry. Co.,* 150 Cal. 776, 780 [89 Pac. 1109], the court said: "Manifestly it is impossible for one driving a vehicle along a street to look in both direc-

tions at once, and it should ordinarily be left to the jury to determine, under the circumstances of each particular case, what amount of vigilance was requisite in order to constitute due care.''

In *Lavin* v. *Fereira*, 10 Cal. App. (2d) 710, 712 [52 P. (2d) 518], it was pertinently stated with respect to the question of contributory negligence: ''When a person takes no precautions at all for his own safety and is injured, and this conclusion is uncontroverted, contributory negligence is a question to be decided by the court. (*White* v. *Davis*, 103 Cal. App. 531, 542 [284 Pac. 1086]; *Stephens* v. *Kaufmann*, 137 Cal. App. 328, 331 [30 P. (2d) 536].) If evidence is introduced relative to the degree of requisite vigilance, and the inferences therefrom are honestly debatable, it becomes a question of fact for the jury to determine. (*Gore* v. *Market Street Ry. Co.*, 4 Cal. (2d) 154 [48 P. (2d) 2]; *Salomon* v. *Meyer*, 1 Cal. (2d) 11, 15 [32 P. (2d) 631]; *Anderson* v. *Market Street Ry. Co.*, 116 Cal. 282, 285 [2 P. (2d) 529].) In the instant case whether respondent looked in the direction from which appellant was approaching, whether the point from which observation was made was prudently selected, whether respondent should have seen appellant's car within a distance of 60 feet, whether respondent should have looked north and south, or north alone, and whether due vigilance was observed continuously, were disputable questions of fact upon which reasonable minds might legitimately debate and honestly reach different conclusions. The question was properly submitted to the jury, and its finding under all the circumstances of the case is conclusive upon appeal.''

This rule is particularly applicable to the facts presented by the instant litigation, especially in view of the fact that respondent Leendert Nederveld could not be expected to anticipate that a truck would be backed from a side street out upon the highway on which he was traveling and which appeared to him to be free of traffic or other obstruction.

For the reasons stated, the judgment is affirmed.

Doran, J., and White, J., concurred.