[Civ. No. 6773.   First Appellate District, Division One.—August 27, 1929.]

SARAH C. MINOR, Respondent, v. GEORGENA FOOTE, Appellant.

Joseph E. Reardon, Benjamin F. Curtaz and Ivores R. Dains for Appellant.

P. O. Solon for Respondent.

THE COURT.—Plaintiff brought this action to recover damages for personal injuries sustained as a result of being struck by an automobile belonging to defendant Adelaide MacSweeney and driven by defendant Georgena Foote. At the conclusion of the trial the action was dismissed as to Adelaide MacSweeney. Plaintiff sued for $15,000 general damages and $777.06 special damages. The defendant Georgena Foote, although denying liability for the accident, stipulated during the trial, which took place before a jury, that plaintiff had necessarily expended the sum of $777.06 for the treatment of her injuries. The jury returned a verdict in plaintiff's favor, but disregarding the stipulation above mentioned awarded her damages for only $500. Judgment being entered for that amount, plaintiff moved for a new trial, and the motion was granted upon the grounds of "insufficiency of the evidence to justify the verdict

and that the verdict is against law, said verdict having been rendered in favor of the plaintiff for a sum less than the amount stipulated by the parties as the special damages to the plaintiff.'' An appeal was taken by the defendant from the order granting the new trial, and in support thereof she contends that the evidence shows that plaintiff's own negligence was the sole proximate cause of her injury and that defendant was not guilty of any negligence, and that therefore, ''conceding for the purposes of argument that the damages awarded her were inadequate, it does not follow that an order granting a new trial for such reason may be sustained if the evidence shows that plaintiff was guilty of negligence as a matter of law which proximately contributed to her injuries, or if the evidence fails to show negligence on the part of defendant and appellant.''

The evidence shows that the accident occurred in Berkeley on September 16, 1926, at about 7:40 P. M., while plaintiff was attempting to cross Atherton Street where it joins Allston Way. The latter street forms the south boundary of the grounds of the University of California, and is occupied by a double-track street railway line. Atherton Street enters Allston Way at right angles on the south side thereof, but does not cross Allston Way. At the time of the accident it was dark, the darkness being intensified by trees and the absence of street lights. Immediately preceding the accident, Mrs. Minor, the plaintiff, who was seventy years of age, but active and in the full possession of her faculties of sight and hearing, and her daughter Ruby Minor, were walking in a westerly direction along the sidewalk on the southerly side of Allston Way. When they reached the southeast corner of the streets they stopped ''and made a survey of the conditions.'' Mrs. Minor testified that they first looked to the left down Atherton, then ahead (west) up Allston, and then continued on their course straight ahead to cross Atherton; that when they reached a point about the middle of the street she heard her daughter scream and turning her head to the right she saw the light of an automobile, and that she was struck almost instantly. The testimony given by Mrs. Minor's daughter was substantially the same, but she stated that when they reached Atherton Street and before venturing across they ''looked in every direction to see if any automobiles were approaching,'' and

seeing none they started across. Appellant was driving westerly up Allston Way in the same direction in which the Minors were walking, and after reaching the center of the intersection of Atherton Street made a left-hand turn to drive southerly down Atherton. Miss Minor testified that she saw the approaching automobile for the first time just as it was making the turn; that it was traveling "very fast," "between 25 and 30 miles an hour"; that she screamed, "Run, Mother, run!" and started to run to the other side of the street; that while running she heard the impact and realized that her mother had been struck.

Appellant was twenty-two years of age and a student at the university. She testified that upon reaching the intersection and while making the left-hand turn she was traveling at a speed of only twelve miles an hour or less; that the headlights of the Ford coupe which she was driving were lighted and that the lights and the brakes were in good condition; that the weather was clear and there was no traffic or other obstacles to obstruct her view of the crossing, but that she did not see Mrs. Minor until she was within three feet of her, at which time she applied the brakes and stopped the automobile within six feet beyond the point of the impact. She admitted, however, that at no time did she sound a horn, nor give any other warning of her approach or of her intention to make the left-hand turn, except to give the regulation hand signal approximately fifty feet before reaching the intersection. She also admitted that the automobile was almost new and that it "did not make an exceptional lot of noise." Furthermore, at the police station following the accident she made a written statement in which she admitted "partial responsibility" for the accident.

█ The question of whether or not a plaintiff has been guilty of contributory negligence is primarily one to be determined by the jury from all the circumstances and physical conditions attending the accident (*Jones* v. *Southern Pac. Co.*, 74 Cal. App. 10 [239 Pac. 429]); and where the evidence of negligence consists of circumstances from which inferences may be drawn in favor of or against negligence, it is the province of the jury to determine whether or not there was negligence (*Keena* v. *United Railroads*, 57 Cal. App. 124 [207 Pac. 35]). It is only where no fact is left in doubt and no deduction can be drawn by the jury

from the evidence that a court can say as a matter of law that contributory negligence is established; and even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one for the jury (*Katz* v. *T. I. Butler Co.*, 81 Cal. App. 747 [254 Pac. 679]). ■ Moreover, in reviewing the question on appeal it will be assumed that the testimony of the prevailing party is true, and the entire evidence will be construed in the most favorable way to sustain the findings of the jury (2 Cal. Jur., p. 926). ■ The law is well settled also that where a new trial has been granted on the ground of insufficiency of the evidence, the action of the trial judge is conclusive in the appellate court, unless there has been an abuse of discretion (*Hanlon Drydock etc. Co.* v. *Southern Pac. Co.*, 92 Cal. App. 230 [268 Pac. 385]).

■ We are of the opinion that the evidence above set forth is legally sufficient to sustain the finding of the jury that plaintiff was not guilty of contributory negligence, and that consequently the trial court did not abuse its discretion in not holding otherwise in ruling on the motion for a new trial.

■ Appellant calls attention to the fact that plaintiff's daughter observed the lights of the automobile in time to avoid injury by running to the other side of the street, and appellant argues, therefore, that ''had plaintiff exercised the same degree of care as her daughter she too would have avoided injury.'' The evidence shows, however, that plaintiff saw the lights instantly after her daughter observed them, and bearing in mind plaintiff's advanced age the jury may well have doubted whether she could have escaped injury by running. Moreover, we do not agree to the proposition which appellant seems to urge, that a pedestrian who is struck while crossing a street in a lawful and prudent manner should be deemed guilty of contributory negligence merely because he did not run upon observing the approach of the automobile which strikes him. ■ As held in *Devecchio* v. *Ricketts*, 66 Cal. App. 334 [226 Pac. 11], the right of drivers of automobiles to use public highways is not superior to that of the humblest pedestrian and accordingly the driver of an automobile has no right to assume that the road is clear, but under all circumstances and at all times

he must be vigilant and must anticipate and expect the presence of others. ▮ In the present case the evidence shows that plaintiff and her daughter had reached the middle of the crossing when appellant, without sounding any warning, suddenly came upon them by making a left-hand turn, and consequently appellant was charged with the legal duty of looking to see that the crossing was clear before attempting to cross it, or, if she was unable to see the crossing because of darkness, of having her automobile under sufficient control at the time she made the turn to avoid striking any pedestrians who were already on the crossing.

The facts of the cases emphasized by appellant in her brief are materially different from those of the case at bar. In *Hamlin* v. *Pacific Electric Ry. Co.*, 150 Cal. 776 [89 Pac. 1109, 1112], the plaintiff was riding a bicycle between the street-car tracks in the daytime, and was overtaken and struck by the car; and it was held that under such circumstances it was perfectly plain that his "failure to see or hear the car must have been the result of absolute inattention to his situation and surroundings, and that he exercised no care whatever." In *Finkle* v. *Tait*, 55 Cal. App. 425 [203 Pac. 1031, 1034], the opinion of the Supreme Court in passing upon a petition for a hearing before that court states that the pedestrian who was struck "either failed to take the trouble to look for automobiles on that side of the street as he crossed, or that he saw the automobile and carelessly walked in front of it"; and that "there was evidence that he was carrying a box of raisins . . . on his shoulders in such a position that it may have obscured his vision." In *Atkins* v. *Bouchet*, 65 Cal. App. 94 [223 Pac. 87], the undisputed facts were that "the plaintiff while crossing the street glanced neither to the right nor the left, and with her umbrella held down to her waist line had her view of the traffic on her left completely cut off and did not see the automobile at any time until after the collision, although the accident occurred in the middle of the day." And in *Ogden* v. *Lee*, 61 Cal. App. 493 [215 Pac. 122], the pedestrian looked twice in the direction of the automobile and saw its lights and notwithstanding continued to walk across the street, with an umbrella pulled down over his face, until he was struck.

The order appealed from is affirmed.