[Civ. No. 9026. First Appellate District, Division One.—January 17, 1934.]

OSCAR WICKMAN, Jr., Respondent, v. MELVILLE LOWENSTEIN et al., Appellants.

Crosby & Crosby for Appellants.

Augustin Donovan and Suren Toomajian for Respondent.

McNUTT, J., *pro tem.*—From a judgment on verdict in a pedestrian plaintiff's favor for injuries negligently inflicted by an automobile driven by defendants, the latter appeal for insufficiency of evidence and excessive damages.

At night, while plaintiff was walking westerly across San Pablo Avenue, Berkeley, he was struck by an automobile of the defendant company driven southerly along the avenue by its employee, defendant Lowenstein, and was so injured that the jury awarded him damages for $17,500. After denial of successive motions for nonsuit, directed verdict, judgment *non obstante* and new trial, defendants appeal on grounds theretofore unsuccessfully urged.

The questions here involved are as follows:

Question No. I. Is the finding of the jury in its affirmative answer to special interrogatory No. I submitted to it contrary to the evidence?

Interrogatory No. I. At the time the plaintiff was struck by defendants' automobile, was plaintiff crossing San Pablo Avenue on the southerly unmarked crosswalk of Page Street? The jury answered in the affirmative.

Question No. II. Was plaintiff guilty of contributory negligence as a matter of law?

Question No. III. Is the evidence sufficient to support the implied finding of the jury that defendant was guilty of negligence proximately causing the accident and injuries to plaintiff?

Question No. IV. Is the verdict for $17,500 in this case excessive?

Appellants hereinafter called defendants, contend that, notwithstanding the jury found that the accident in question happened at a pedestrian crossing, the evidence of certain physical facts demonstrates that the plaintiff's testimony that it occurred there is entirely unworthy of belief, and that therefore the evidence does not establish that the accident was proximately caused by the defendants' negli-

gence, and also that the evidence does establish contributory negligence in plaintiff as a matter of law.

San Pablo Avenue is a busy automotive thoroughfare and as well carries double street-car tracks. It runs from north to south. It is traversed by Page Street and a block to the south by Jones Street. No one witnessed the accident save the plaintiff and the defendant Lowenstein. Plaintiff lived to the west of the avenue and to the south of Page Street. He had been visiting to the east of the avenue and was on his way home either at the crossing or somewhere down the block therefrom when struck. His testimony covers his approach to the avenue from the east along the southerly side of Page Street, his pausing at the curb to observe vehicular traffic, his observance of certain automobiles bound respectively north and south, his observation of their relative distances from him, his permitting a certain north-bound car to pass before stepping into the street, his progress across the street within the projected unmarked crosswalk, the pursuit of his course up to the instant of the impact at a uniform and normal rate of speed without pausing, which rate of speed he twice exhibited to the jury, his looking while progressing in the direction of approaching cars, his visual measurement of distance and determination of safety in such progress, and finally his being struck by the defendants' car a heavy blow which rendered him unconscious. His progressive positions and the relative positions of the traffic described by him were indicated on a map received in evidence. Then, too, there was an electric light on the corner opposite that whence he started to cross the street, while none was down in the block to the south.

The defendants concede that "if the accident occurred on the southerly crosswalk of Page Street, or indeed anywhere within the intersection of Page Street and San Pablo Avenue, or within either of the cross-walks thereof, then the evidence is sufficient to support . . . the implied finding of the jury that defendant was guilty of negligence proximately causing the accident and injuries to plaintiff".

The testimony of the plaintiff is intrinsically rational, deliberate and descriptive of a course of conduct consistent with that which should have been followed by a reasonably prudent person in an attempt to cross a crowded thorough-

fare in safety. It does not present any substantial internal conflict.

The testimony of the defendant driver Lowenstein is, of course, in conflict with that of the plaintiff. "But, in determining whether the findings of the court are supported, we are required only to look to the testimony presented by the plaintiff and, if sufficient, we may disregard, in such consideration, any adverse showing made by the defendant." (*Keyes* v. *Nims,* 43 Cal. App. 1, 8 [184 Pac. 695, 698].) To the same effect: *Sinsabaugh* v. *Clark,* 110 Cal. App. 340 [294 Pac. 462]; *Minor* v. *Foote,* 100 Cal. App. 441 [280 Pac. 197], and other cases.

The only exception to this rule is made where the testimony of the plaintiff is inherently so improbable as to be entirely unworthy of belief. (*Estate of Russell,* 189 Cal. 759 [210 Pac. 249].)

Defendants' contention that the physical facts in the case are so inconsistent with plaintiff's version of the accident as to destroy the force of plaintiff's testimony cannot be sustained. Such facts consist of certain tangible evidence of the accident discovered in the street immediately thereafter; at a point 174 feet southerly from Page Street, a photograph which plaintiff was carrying in his hand at the time of the impact and a metal figure 8 which was dislodged from defendants' automobile were found. Twenty-four feet farther south, or 198 feet from Page Street, a cap worn by plaintiff was found. Twenty-one feet farther south, or 219 feet from Page Street, one of plaintiff's shoes was picked up. Lying unconscious, his head close to the curb, his body projected into the street at distances variously described from 220 to 255 feet south of Page Street, plaintiff was found. Two hundred seventy-nine feet south of Page Street some metal ornaments broken from defendants' car were picked up. These objects, including the body of plaintiff, were progressively dropped. In disposing of the cogency of such physical evidence we adopt the views of the trial judge expressed on denial of the motion for a new trial.

"As to 'physical facts': I cannot say as a matter of law that they are so controlling, in the light of all the evidence, as to warrant taking the case from the jury. As said by our Supreme Court: 'Common experience and observation teach us that strange and astonishing things happen in the

world of physical phenomena, and accidents sometimes appear to happen in manner unaccountable. . . . It is for the jury to weigh and balance probabilities.' (*Neilson* v. *Houle,* 200 Cal. 726, 729 [254 Pac. 801], and cases cited in the opinion.) The jury was justified in inferring that after being hit the plaintiff was carried forward on the front of the automobile of defendant for some distance, and that the various articles shown by the evidence were also carried for different distances and dropped in different places along the route traveled by the automobile. I cannot say that the law of gravitation would require that all or any of them would, without question, be dropped at the place of impact. (*Tucker* v. *San Francisco,* 111 Cal. App. 720 [296 Pac. 101].) The law of gravitation urged by defendant would apply to the plaintiff's body as well as to said articles."

Since contributory negligence does not appear as a matter of law and the evidence of plaintiff is ample to support the general verdict of negligence on the part of defendants, it is not incumbent upon this court to account for the jury having accepted the plaintiff's and having rejected the defendants' version of the accident. It is not inappropriate, however, to mention that a police officer testified for plaintiff that when he arrived on the scene some seconds after the crash which he had heard 800 feet away, the defendant told him that he had not seen plaintiff until his car struck him, while in his own behalf defendant testified that he had seen plaintiff one to ten feet ahead before the impact.

If any criticism may be made as to the sufficiency of the plaintiff's testimony to support the verdict it is that plaintiff, having seen the approaching automobile, erroneously judged its speed and distance when he continued his way over the street crossing. His testimony in that regard is that when he stepped between the westerly car rails, he again looked to his right and saw the second south-bound machine about 250 feet away and that he continued to walk westerly about 12 feet when, looking once more northerly, he perceived defendants' car within a foot of him and then received the blow. The case is, nevertheless, one for the jury.

"There seems to be a general rule running through the cases where a pedestrian, or one standing on a highway, is injured by an automobile, which usually determines whether

the question of contributory negligence is one of law, or of fact. Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, where he takes no precaution at all for his own safety, it is usually a question for the court. *Where he looks but does not see an approaching automobile, or seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury.*'' (Our italics.) (*White* v. *Davis,* 103 Cal. App. 531, 542 [284 Pac. 1086].)

So much for the integrity of the verdict in point of liability—is the award excessive?

█ When injured plaintiff was twenty-two and a half years old with an expectancy of about forty years; he had been employed as an apprentice machinist's helper for over two and a half years until not long prior thereto the place of employment closed; his earnings amounted to $140 to $160 per month. Plaintiff's medical testimony was given by a general practitioner in charge of the patient, and three others, specialists in the matters to which their evidence was respectively addressed; all are of the front rank in the profession. Their findings and prognosis follow: Cranial fracture along the suture line with permanently impaired cerebration; probably rupture of a kidney with apparent functional restoration; fractures in left ninth, tenth, eleventh and twelfth ribs in a row close to the spine; and in corresponding position in the right, tenth and eleventh ribs with fractures farther out to the side in the tenth rib; ribs healed; comminuted fracture of fibula with a fracture of a portion of the shin bone or tibia known as the tibial spine, a projection into the knee joint, and a tearing from its lodgment of the cruciate ligament, with permanent instability of the joint; ligaments separated and likely to remain so; excessive motion of the joint by reason of the tearing of the ligament which causes a slipping out and giving way of the knee. The plaintiff's ability to do any hard physical work was thereby affected as the knee is likely to give way under any heavy lifting, and each time the knee might give way the strain as the result would become more severe. The brain injury has resulted in a definite lack of the power of concentration, ready susceptibility to fatigue

with mental dullness and apathy. Insomnia often results from the condition found, hence on the following day plaintiff would not be in a good physical condition. Plaintiff would in all reasonable certainty be unable to carry on the type of work that he had done before the accident or any other type of work which might require mental effort and because of his physical condition he is not able to work consecutively at any physical work, and that there is not any prospect of any improvement. Plaintiff suffers and will continue to suffer intermittent dizziness due to head injury.

Plaintiff was irrational for three days after the accident, confined in a hospital for two months, thereafter at home for a month, and for some time thereafter got about upon crutches and with a cane. His special damages were $1500.

Defense called one medical man, who found the mental function normal, ribs healed, kidney unaffected by the accident, dizziness due rather to liver disturbance than the suggested fracture which he could not see, but conceded weakness and instability in the knee which in his opinion could be cured in only one way, by operating and suturing down the end of the cruciate ligament; that while the condition was technically operable, he had never done or seen the operation, which, if unsuccessful, would result in a stiff knee. He conceded that an elastic stocking might help the joint, but it would never give it the stability that it had originally.

It is unnecessary to dwell upon the pain and suffering endured by plaintiff. The jury accepted the testimony of plaintiff's professional witnesses. This court is bound thereby. The award cannot be said to be excessive.

The judgment is affirmed.

Knight, J., and Tyler, P. J., concurred.