## HUNTER v. MICHAELIS.

No. 6995. Decided October 6, 1948. (198 P. 2d 245.)

See 50 C. J. S., Juries, sec. 102; 5 Am. Jur. 899. Liability for injury to pedestrian who suddenly steps into path of automobile, note, 113 A. L. R. 528.

Rehearing denied Feb. 7, 1949.

*Rich, Rich & Strong,* of Salt Lake City, for appellant.

*Golden W. Robbins,* of Salt Lake City, for respondent.

McDONOUGH, Chief Justice.

Defendant appeals from a judgment on a verdict in favor of plaintiff for damages for personal injuries arising out of an accident in Beverly Hills, California. While walking or running across Wilshire Boulevard, plaintiff was struck by defendant's car. Plaintiff's left large toe was fractured, and in consequence thereof she received surgical attention which included removal of the joint, which caused permanent impairment of the function of that toe.

There is no dispute as to the fact that the accident occurred on Wilshire Boulevard, but the location on that boulevard of the point of impact constitutes one of the major controversies in this case. Plaintiff claims she was walking in or near the crosswalk at Camden and Wilshire, whereas the defendant contends that the evidence compels the conclusion that plaintiff was crossing the boulevard in the middle of the block about 125 feet beyond the crosswalk in violation of traffic ordinances. The trial court successively denied defendant's motion for nonsuit and her motion for directed verdict.

In urging reversal, defendant contends in substance: (1) That the court erred in granting plaintiff's untimely demand for a jury trial. (2) That the verdict is contrary to the law and the evidence in that the plaintiff was guilty of contributory negligence as a matter of law. (3) That certain evidence was erroneously admitted. (4) That the court erred prejudicially in its charge to the jury.

The contention that the trial court erred in placing the case on the jury calendar after plaintiff had failed to make timely application, must be overruled. The granting or denial of plaintiff's belated motion for a jury trial was within the discretion of the trial court. *Thompson* v. ▮ *Anderson,* 107 Utah 331, 153 P. 2d 665, and cases cited. The court on its own motion might have called a jury to try the case. *Ogden Valley Trout & Resort Co.* v. *Lewis,* 41 Utah 183, 125 P. 687. Hence, appellant may not predicate prejudicial error on the action of the trial court in granting plaintiff's request for a jury though not made strictly in accordance with Sec. 104-23-6, U. C. A. 1943 or the rule of the court below.

Plaintiff alighted from the front door of a bus at Camden drive and Wilshire Boulevard at about 11:00 P. M., September 22, 1944. The bus stopped at the north side of Wilshire, going west. There is a crosswalk extending from the north curb to the south curb of Wilshire Boulevard. About 10 feet to the east of such crosswalk, extending from the north curb to the center line of the street, there was a white stop line before which all westbound cars were required to stop when the semaphores at the intersection of Camden drive and Wilshire Boulevard flashed red to traffic on Wilshire. Plaintiff was on her way to the Beverly-Wilshire hotel, which is one block east, on the south side of the street. She waited for the bus to pull away and proceed west before she started to cross the street. Plaintiff testified that the semaphores were then on flash and not on cycle, flashing amber to cars on Wilshire and red to cars entering the intersection from Camden. The materiality of the testimony as to the operation of traffic signals relates to the question of plaintiff's own due care. Inasmuch as plaintiff started to cross the street as soon as the bus passed, if the traffic lights were then on cycle as defendant and her witnesses testified, plaintiff likely would have crossed Wilshire when the lights flashed red to traffic crossing Wilshire. However, this involves a disputed question of fact, and regard-

less of the number of witnesses who testified otherwise from memory, the jury's resolution of the conflict in the evidence must be left undisturbed.

Plaintiff testified that she did not know whether she was in the crosswalk when she left the north curb, or whether she was between the area situated between the stopline hereinabove mentioned and the crosswalk. According to her account, after proceeding to cross the street she stopped when she reached the double line in the center of the street to permit three cars to pass which were approaching rapidly from the west or from her right. She looked to the west and saw two other eastbound cars with lights burning. She stated that she did not know in which of the four lanes for eastbound traffic said cars were traveling, but at the time she estimated that they were far enough away so that she could proceed safely across the street. She therefore proceeded. Upon reaching the next traffic lane to the south she observed the lead car of the two above mentioned, about 50 to 75 feet west of semaphore No. 1, which would indicate from distances testified to that the car was from 155 to 180 feet away when she was 10 feet south of the center line. She did not know the speed of the two cars but thought they were traveling quite rapidly. She testified that without again looking toward the approaching cars she walked rapidly expecting to reach the south curb before the lead car got too close to her. Before reaching the south curb she was struck by a car which proved to be that driven by defendant.

Defendant, on the other hand, testified that the traffic signals were on cycle and that the light was red when she reached the intersection; that she stopped at semaphore No. 1 at Camden and Wilshire; that the light changed and she proceeded through the intersection reaching a speed of about 20 miles per hour at little distance east of the intersection; that the street and intersection were well-lighted; that plaintiff was crossing the street not in or near the crosswalk, but in the middle of the block; that plaintiff

was first seen when she was about a car-length to the north and to the east of defendant's car, walking rapidly into the path of the defendant's car; that defendant immediately applied the brakes and had slowed down to about one mile per hour when the impact occurred, the middle of the bumper of her car striking the plaintiff. Plaintiff was knocked down directly in front of defendant's car, which stopped immediately after plaintiff was hit.

The operator of a car which followed defendant's car, one Jones, testified that plaintiff was walking rapidly across the street at about the middle of the block; that his car was then east of the intersection behind defendant's car traveling at about the same rate of speed as defendant's car; that he saw the brake lights flash on defendant's car and saw her car come to a quick stop; that he brought his own car to a stop quickly behind the defendant's car. On cross-examination it was disclosed that subsequent to the accident this witness had written to plaintiff and that among other things he stated that the light was red as plaintiff started to cross the street but that the light changed to green before she got across. The letter also stated that defendant did not slow down.

A traffic officer testified that he was on his motorcycle at the southwest corner of the intersection, that his attention was directed toward the east by the screeching of tires on the pavement; that as he looked up he saw a car about 120 to 125 feet east of the intersection come to a halt, and saw a "body thrown through the air" in an arc and about 6 to 8 feet to the right of the car. The officer later took measurements and found that the front of defendant's car when it stopped was near a lamp-post which was situated at about the middle of the block, the front of the car being 6½ feet from the curb and the rear end 8 feet therefrom. He found the Jones car 8 feet behind the defendant's car. He measured 36 feet of skid-marks, and on the basis of the length of the skid-marks and the condition of the pavement he estimated the speed of defendant's car at the time the

brakes were first applied to be 22 miles per hour. The posted speed limit in that area was then 25 miles per hour.

While the evidence of the defendant is to the effect that the plaintiff was hit at a point which was near the lamp-post, located some 125 feet east of the intersection, defendant's evidence being in conflict with a portion of plaintiff's testimony, the trial court would not have been warranted in taking from the consideration of the jury the issue as to the locus of the collision, unless there were uncontroverted evidence which would have required a finding that plaintiff was neither in nor near the crosswalk at the time she was hit by defendant's car.

Appellant contends that the testimony of plaintiff to the effect that she was in or near the crosswalk when hit, is inherently impossible in the light of other evidence; that certain irrefutable and uncontradicted facts in the nature of physical evidence and measurements at the scene of the accident, make it impossible to believe the plaintiff's statement that she was at or near the crosswalk. We are unable to so conclude. It is not disputed that when plaintiff got up from the place on the pavement where she fell after she was hit that she ran over to the sidewalk and that when she fell again she was by the lamp-post mentioned hereinabove.

Plaintiff testified that she had practically reached the south curb when she was hit. She said she did not know which part of the car struck her. For a moment after being hit she did not recall anything, but realized that she had been struck by a car. She said she had a sensation of going through the air in a circular fashion; that she saw before her lights which seemed to be "jogged off"; that at the time it seemed to her that she was in the air for some little time, and that she did not recall striking the pavement at all, but later realized that she did strike the pavement. She testified that she had no idea as to how far she was thrown. She recalled that when she got up she was nearer the cen-

ter of the boulevard than when struck by the car; that when she got up from the pavement she stood there momentarily, screaming, and then ran to the sidewalk on the south in a diagonal direction.

Plaintiff did not know how far she was thrown upon being hit, nor whether she was carried on defendant's car any distance, nor whether she was thrown any distance off or from the car. The point at which she fell was some distance from the crosswalk, and although she said she was not sure how far, she estimated that said point where she fell was about 70 feet east of the crosswalk. When she got up, she remembered that she was facing west and that there was an automobile facing east, standing about a car length to the west of her. Said vehicle was identified as defendant's car. She also said it seemed to her that there was another car parked closer to the curb than defendant's car, and beyond it to the west.

We cannot say that such testimony is contrary to physical facts in evidence. The plaintiff may have been struck while in or near the crosswalk and having been thrown in the air struck the body of the car and was carried along some distance before being dropped to the pavement. While such theory is contrary to the evidence of defendant, this merely gave rise to a conflict in the evidence which it was the province of the jury to resolve. True, defendant's witness, a traffic officer testified that it was the screeching of the brakes which called his attention to the accident and that when he looked the plaintiff was going through the air in an arc at a point some 120 to 125 feet beyond the crosswalk. But though this be assumed as a fact, it is not so inconsistent with anything which plaintiff testified to as to cause us to conclude, contrary to the conclusion reached by the jury, that her testimony as to the locus of the collison is not to be believed. As stated in *Austin* v. *Newton,* 46 Cal. App. 493, 189 P. 471, 474:

"It cannot be laid down as a rule of law that a plaintiff in a personal injury case cannot recover unless the court can see that every detail of the accident, as testified to by the plaintiff and his witnesses, is consistent with admitted physical facts and the laws of science. Undoubtedly where some of the details of an accident, as described by a witness, conflict with admitted physical facts, the whole story of the accident, as given by that witness, may be entirely discredited; but, as an appellate court, we cannot reverse unless we can say that the admitted physical facts are wholly irreconcilable with the negligence alleged in the complaint. To entitle respondent to an affirmance, it is sufficient if it can be said that, notwithstanding the admitted physical circumstances, the accident could have been caused by the negligence charged in the complaint. * * *"

And see *Neilson* v. *Houle*, 200 Cal. 726, 254 P. 891, and *Wickman* v. *Lowenstein*, 136 Cal. App. 279, 28 P. 2d 681.

But there is a further answer to the argument of appellant even though it be assumed that the collision between appellant's car and respondent occurred some distance east of the crosswalk. On direct examination, the respondent did not testify unequivocally that she was in or near the crosswalk. On cross-examination she testified that she proceeded southerly across the boulevard. She declared, "I believe I was in the crosswalk," and also, "I know I was between the white lines." She again stated that she believed she was in the crosswalk; that to her best recollection she was there. Subsequently she testified, "I knew I was at or near the crosswalk." When pressed for a more specific answer she said, "I will state that I was in the crosswalk."

If this evidence plus her testimony relative to where she was thrown to the pavement by collision with defendant's car be such as to compel a finding that the crossing of Wilshire Boulevard was at a point considerably east of the crosswalk, we are still confronted with the question of whether plaintiff's conduct in crossing as she testified she crossed, was negligence as a matter of law. Sec. 562 of the Vehicle Code of California was introduced in evidence. It provides:

"(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway."

"(b) The provisions of this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway."

Under such provision it is the contention of appellant in effect that if respondent crossed the street between intersections and failed to "yield the right of way" to a motorist, as a matter of law she could not recover. The statute has not been construed as contended for by the appellant by the courts of California. In *Lang* v. *Barry*, 71 Cal. App. 2d 121, 161 P. 2d 949, 951, involving the injury of plaintiff while crossing between intersections, the court said:

"Defendant does not question the sufficiency of the evidence to establish her negligence, but urges that the minor plaintiff was contributorily negligent as a matter of law in crossing the center line of the highway into the path of the car he had seen approaching, and in failing to yield the right of way as required by §562 of the Vehicle Code, St. 1935, p. 188. The contentions are without merit. Section 562 does not prohibit a pedestrian's crossing outside of a crosswalk at any time when a motor vehicle is on the highway. 'While the duty to yield the right of way, imposed upon the pedestrian by section 562, may call for a higher degree of care while crossing between intersections, the real question of fact in such a case is whether the required care has been exercised, and not merely whether or not the right of way has been actually yielded.' *Shipway* v. *Monise*, 59 Cal. App. 2d 565, 571, 139 P. 2d 60, 63. 'It cannot be said that as a matter of law a pedestrian who crosses a well lighted business street in the middle of a block is guilty of violating the statute or of negligence proximately contributing to his injury when he proceeds on his way after having observed an automobile approaching from a distance of 200 feet, with nothing to obstruct his view or that of the driver.' *Fuentes* v. *Ling*, 21 Cal. 2d 59, 62, 130 P. 2d 121, 122. In the Fuentes case the observation was made at the center line, whereas in this case the observation was made at the edge of the eastbound traffic lane. But the question is still whether, as a matter of law, the plaintiff failed to exercise the requisite degree of care. The answer depends upon whether the care exercised was commensurate with the danger reasonably to be anticipated."

And in *Wickman* v. *Lowenstein*, 136 Cal. App. 279, 28 P. 2d 681, 682, the opinion states:

"If any criticism may be made as to the sufficiency of the plaintiff's testimony to support the verdict, it is that plaintiff having seen the approaching automobile, erroneously judged its speed and distance when he continued his way over the street crossing. His testimony in that regard is that, when he stepped between the westerly car rails, he again looked to his right and saw the second south-bound machine about 250 feet away, and that he continued to walk westerly about 12 feet when, looking once more northerly, he perceived defendants' car with a foot of him and then received the blow. The case is nevertheless one for the jury.

" 'There seems to be a general rule running through the cases where a pedestrian, or one standing on a highway, is injured by an automobile, which usually determines whether the question of contributory negligence is one of law, or of fact. Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or, in other words, where he takes no precaution at all for his own safety, it is usually a question for the court. *Where he looks but does not see an approaching automobile, or, seeing one, erroneously misjudging its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury.*' (Our italics.) *White* v. *Davis*, 103 Cal. App. 531, 542, 284 P. 1086, 1091."

The Wickman case involves a pedestrian presumably crossing in or near an unmarked crosswalk; but the Davis case from which the rule as to the measure of care is therein quoted involved a plaintiff standing on a roadway between intersections. In *Martin* v. *Harrison,* Or., 186 P. 2d 534, the rule of *White* v. *Davis,* 103 Cal. App. 531, 284 P. 1086, is quoted with approval in a case involving injury of a pedestrian at a place on a street between street intersections. The Oregon statute discussed in the Martin case is in all material respects the same as that of California here involved.

Applying the law of the cited cases to the testimony of respondent as set out hereinabove, it cannot be said as a matter of law that she was guilty of contributory negligence. It is pertinent to emphasize, at this point, ■

that, we are here applying the substantive law of the state of California, where the accident occurred, to the presumptive findings of the jury. Whether the case would be so ruled in this jurisdiction under similar facts, we express no opinion.

There are several assignments of error which relate to improper admission of evidence. We are of the opinion that testimony of a local police officer, to which one assignment is directed, even if erroneously admitted, was not prejudicial. On cross-examination the officer qualified his statements to such an extent that there was little, if any material conflict between his testimony as qualified and that of the officer who testified for defendant, as to the particular item in dispute.

Most of the alleged errors relating to admission of evidence, pertain chiefly to evidence obtained on deposition. Plaintiff, being a nonresident, and having been given medical and surgical attention in Los Angeles and in Reno, had to obtain certain medical evidence by deposition. In one instance, the time for taking the deposition of an employee of the City of Beverly Hills was shortened, and objection was made to the introduction of such evidence. The time was shortened by court order. Defendant was represented by counsel at the taking of the deposition and had opportunity to cross-examine the deponent. Admission of such testimony was not error.

There was also a motion to suppress the evidence of a physician gives on deposition, and also a motion to exclude such testimony, based upon the alleged failure of the doctor to return for further cross-examination. The doctor was asked if he had with him his office record, and when he replied in the negative, he was asked if he would subsequently produce it. The record shows that the cross-examination was discontinued with a statement, "That is all." The deponent left, and nothing was said at the time about returning. The transcript of the deposition contains a re-

cital to the effect that by "stipulation" the attorneys appeared for further cross-examination of the witness. The doctor did not reappear. Counsel for appellant charges that the doctor failed to make the office record available, and that appellant was deprived of the privilege of cross-examination as to a material matter whereby the credibility of the entire testimony could be tested.

The right to cross-examine a witness is a valuable right, which must not be curtailed by withdrawal of the witness so that such right is in effect denied. However, in this case it does not appear that the witness promised to return and no suggestion appears in the record that prior to the withdrawal of the witness, he was asked to be available for call or to return at any specified time. In this case counsel likely intended to request the witness to reappear at a specified time, but forgot to do so. We find no prejudice in this record, and while it was unfortunate that the necessity for having the deponent agree to return was overlooked, there is no basis for exclusion of the entire testimony nor any cause for suppression of the deposition. The failure to have the office record with the physician when he was testifying might well go to the weight of his testimony, but it was not sufficient ground under the circumstances related, for excluding his testimony.

Defendant alleges that numerous errors were committed in the court's charge to the jury.

Some of the complaints made by appellant are not substantiated by the record. Two, however, call for discussion. Excessive speed upon the part of defendant was alleged in the complaint as one of the acts of negligence upon the part of defendant. The court instructed the jury that it was the duty of defendant to drive her car at the time and place in question in conformity with the California statute, Vehicle Code Cal. § 510:

"No person shall drive a vehicle upon the highway at a speed greater than is reasonable and prudent, having due regard for the traffic

on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property. A violation of this law constitutes negligence."

The appellant cites as prejudicial, the giving of such instruction for the reason that there was no evidence adduced to the effect that her car was being operated at an excessive or unreasonable rate of speed, or in violation of the cited statute. She points out that plaintiff offered no competent evidence of any excessive speed, that she in fact testified that she did not know how fast defendant's car was traveling. Defendant testified that she was going less than 25 miles per hour, and the officer testified that at the point where the brakes were applied, the speed was from 20 to 22 miles per hour.

The evidence shows that there were relatively few cars on the street at that time of night, and there was no evidence of any pedestrian traffic crossing the street other than plaintiff. There being a posted speed limit of 25 miles per hour, no evidence was presented to show that at that time the traffic was heavy enough to require a lesser speed to be reasonable. There is lacking any evidence which would show that a speed of 20 to 25 miles per hour was excessive or unreasonable. We think the evidence not such as to justify giving an instruction on the speed of defendant's car. The evidence clearly indicates that the negligence of defendant, if any, was in failing to keep such a lookout ahead as to see plaintiff in time to have avoided striking her.

Appellant likewise complains of instruction No. 11 which charges that

"it is the duty of the driver of every vehicle upon a public roadway to exercise reasonable care to avoid colliding with any pedestrian upon such roadway and, *under certain circumstances, to give a warning signal, by sounding a horn, of the driver's approach, where such warning signal would be given by a driver using reasonable care, under the circumstances of the situation.*"

The appellant contends that the italicized portion of the instruction is particularly objectionable, in view of the fact that it invited the jury to find defendant negligent inasmuch as she stated that she did not sound her horn. The instruction indicates that the purpose of sounding the horn would be to give a warning of the approach of defendant's car. Plaintiff herself testified that she saw defendant's car approaching, and that she watched it while she walked about 10 feet south of the center line of the boulevard. Under such state of facts, the failure to sound the horn could have had no causal connection with the collision, unless the evidence further showed that defendant saw or in the exercise of reasonable care should have seen the plaintiff proceeding across the street in or into the path of defendant's car in time to have effectually sounded her horn.

If plaintiff walked into the path of defendant's car so suddenly and such a short distance from defendant's car that all defendant had time to do was to apply the brakes to attempt to bring the car to a stop, the defendant would not have been negligent in not sounding the horn. The evidence did not justify the giving of the instruction in question. In connection with the issue relative to sounding of the horn, and in light of instruction No. 11, defendant also assigns as error the court's refusal to give her request No. 6, which reads as follows:

"If you find from a preponderance of the evidence in this case that the defendant at the time and place of the accident was operating her automobile with the same degree of care and caution that an ordinarily prudent person would have exercised under the same circumstances and that by reason of the sudden or unexpected action of the plaintiff in rapidly walking across the street and into the path of the defendant's automobile, the defendant in the exercise of due care did not have sufficient time and space to sound any horn, then you are instructed that the defendant's failure to sound the horn on her automobile was not negligence."

If it were proper, in any event, to give instruction No. 11—an abstract statement of law—then, in the light of all

the evidence, defendant was entitled to have the substance of the quoted request of defendant also submitted to the jury. Considering the record as a whole we conclude that the giving of the discussed instructions and the failure to give defendant's request No. 6, would in all likelihood mislead the jury, and hence constitute prejudicial error.

The judgment is therefore set aside and the cause is remanded to the district court for a new trial. Costs to appellant.

WADE, J., concurs.

PRATT, J., concurs in the result.

WOLFE, Justice (concurring).

I concur. I cannot believe from the evidence that Miss Hunter, when struck, was at or near the crosswalk. I doubt that any reasonable mind could so find in spite of her testimony. The physical facts refute it. The officer, whose attention was attracted by the screeching of the tires on the pavement, testified that the skidmarks made by defendant's automobile were 36 feet long, and the point where they terminated was near a lamp post about 125 feet east of the intersection. Giving the plaintiff the benefit of a finding that she was struck just as defendant applied her brakes—she, the plaintiff, must have been 125 minus 36 or about 90 feet east of the intersection. I cannot see how this girl could have been carried on defendant's car from or near the crosswalk to the point where she finally fell in the street. Laying aside the defendant's and Jones' testimony and the improbability of the plaintiff's testimony (because it was for the jury to assess its weight and credibility), I think there are facts etched on the pavement which make it impossible for any reasonable mind to believe that Miss Hunter was on or near the crosswalk when she was struck.

I agree, however, with the Chief Justice that under the California law it is not negligence in law for a person to

cross the street at any place other than at a crosswalk. I am also in accord with the view that it is a jury question as to whether the plaintiff exercised due care in keeping a lookout while she was crossing the street and whether she gave sufficient reappraisals of the traffic approaching from the west as she was proceeding across. That is what I contended for in *Hickok* v. *Skinner*, 113 Utah 1, 190 P. 2d 514.

As to the instructions, I agree with the reversal because I think the Chief Justice correct in his observation that there was no evidence that defendant's car was being operated at an excessive or unreasonable rate of speed. I have heretofore called attention to the fact that in my opinion all reasonable minds must conclude from the evidence that the defendant had passed beyond the intersection and crosswalk before she struck the plaintiff. The question then arises, where the evidence is uncontradicted that defendant was traveling at a rate of speed less than the posted speed limit, should the issue of excessive speed be submitted to the jury, in the absence of any showing by plaintiff that due to peculiar conditions existing at the time, e. g. unusually heavy traffic, adverse weather conditions, limited visibility, etc., the posted speed limit would be a dangerous rate of speed? I think not. If so it would seem to follow that in any case of collision the jury should be allowed to pass on the question of whether the speed was reasonable or prudent even though the streams of traffic were punctuated with wide spaces between cars and only one or two lanes out of eight lanes were in use near the scene of the accident and there was no evidence of anything which would call for a lesser speed, unless every driver must drive in anticipation of the possible negligence of others. I think the issue of negligence in this case as far as defendant is concerned must be limited to failure to keep a proper lookout and failure timely to sound a horn. I therefore concur in the order reversing and remanding for new trial.

LATIMER, Justice (dissenting).

I dissent.

I agree with Mr. Chief Justice McDONOUGH that under the California decisions whether or not plaintiff is guilty of contributory negligence is a question to be determined by the jury.

Viewing the evidence favorable to plaintiff, a jury could have found that she was crossing Wilshire Boulevard in a pedestrian zone; that she had proceeded half way across the boulevard when she stopped to permit three cars to pass; these cars were coming from the west; that after the passing of the three cars, she looked to the west and saw the lights of other approaching vehicles; that she then walked across the next lane of traffic and as she reached a point approximately 25 feet from the curb, she again looked to the west; at that time she estimated the cars were from 150 to 180 feet west of her and that she had ample time to reach the curb in safety; and, that acting on this assumption, she started across the last two traffic lanes and was struck when she was a short distance from the curb.

In the recent case of *Hickok* v. *Skinner*, 113 Utah 1, 190 P. 2d 514, we had occasion to pass on a duty of a driver of a vehicle to make frequent observations and appraisements of the relative positions of two cars when time and circumstances permitted. Basing our decision on the distance to be traveled, the length of time the plaintiff had to reappraise the position of defendant's car, and plaintiff's failure to look in the direction from which he knew traffic was coming before he drove into a position of danger, we held him (plaintiff) to be guilty of negligence as a matter of law.

In this case, if we accept plaintiff's evidence, she looked when she reached the half-way point, permitted traffic reasonably close to pass, traveled across the next lane of

traffic, looked again and estimated she had time to reach the curb in safety. True, she apparently made a bad estimate, but it appears to me that considering the point she had reached in crossing the street, the fact that she was entitled to the right of way over approaching traffic, and that the oncoming cars were still at a considerable distance away, the jury could reasonably conclude as they did that she was not negligent in not looking again.

As I interpret the California decisions and analyze the reasoning of this court in the *Hickok* v. *Skinner* case, supra, I come to the conclusion that under the law in both jurisdictions the trial judge was right when he refused to direct a verdict against plaintiff based on the principle that she was guilty of negligence as a matter of law.

I dissent from those portions of the court's opinion which hold the court improperly instructed the jury. As to the first instruction, I believe it is correct under the California decisions and statutes. The majority of the court base their opinion on the proposition that the posted speed for that district was 25 miles per hour and that there is no evidence that defendant exceeded that speed. I concede the evidence does not justify a finding that defendant exceeded the posted speed limit, but there are two reasons why this is not controlling as to her negligence. Under California law, driving within the posted speed limit may be negligence if the driving is such as to violate the basic speed law, which is the law given by the trial judge in his instructions. Secondly, the posted speed limit does not necessarily apply when traveling into and across traffic-controlled intersections. In this instance, we have Wilshire Boulevard which appears to make a "Y" intersection with two other streets. Plaintiff was in a crosswalk crossing the boulevard and the flasher signal was flashing in the direction from which defendant was coming, warning her that she was about to enter and cross an intersection that might be being used by both pedestrians and vehicular traffic. To hold that because defendant was not traveling faster than the posted

speed she was not guilty of violating the basic California law, ignores the facts I have mentioned and is contrary to the statutes of the State of California.

The majority of the court hold the trial judge erred in giving instruction No. 11. I believe this instruction correctly states the law and is applicable to the facts of the case. While conceding plaintiff testified she saw the lights of the cars approaching, she also estimated they were 150 to 180 feet from her. The rule announced in the prevailing opinion is that if a pedestrian, at night, makes an inaccurate estimate as to how far away an approaching car might be, he, or she, is not entitled to be warned of the close proximity of the vehicle even though a reasonably prudent driver would have sounded a warning. I had always assumed that the giving of a warning by sounding a horn was not only for the purpose of notifying another party that the vehicle was approaching down the street, but was also for the purpose of calling their attention to the fact that the car was so close that a collision was imminent. I believe the jury in this case could have reasonably found that plaintiff's judgment as to distance was not good; that had defendant sounded her horn when a reasonably prudent person would have done so, plaintiff would have been apprised of the fact that the defendant's car was so close that plaintiff must take immediate steps to avoid a collision; and that defendant's failure to so warn plaintiff had a causal connection with the injuries suffered.

The last instruction referred to in the prevailing opinion is one requested by the appellant. The refusal of the trial court to give this instruction is held to be error. The trial judge indicated on the request that it had been given in substance and with this I agree. A reference to instruction No. 11, given by the trial court, shows that the jury was instructed, in effect, that defendant could not be charged with negligence in failing to sound a horn unless a reasonably prudent person would have taken such action under the facts and conditions found to be then existing. It is

evident to me that if the jury found that defendant was operating her automobile with the same care and caution that an ordinarily prudent person would have exercised under the same circumstances, and that plaintiff suddenly and unexpectedly walked into the path of defendant's car, and defendant did not have time to sound a warning, that no reasonable jury could find her negligent because she failed to sound a horn. To me, the only difference between the two instructions is that the one requested singled out and particularized some of the evidence. Having covered the subject in one instruction, the fact that the court refused to emphasize certain parts of the evidence does not constitute error.